UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KIMBERLY HUGHES, and            )
JENNIFER SMITH, *as*            )
*Co-Administrators of the Estate of* )
*Clyde Smith, Jr.*,             )          No. 5:19-CV-33-REW
                                )
        Plaintiffs,             )          OPINION & ORDER
                                )
v.                              )
                                )
THREE FORKS REGIONAL JAIL       )
AUTHORITY, et al.,              )
                                )
        Defendants.             )

*** *** *** ***

Clyde Smith, Jr. died after roughly 7 hours in custody at Three Forks Regional Jail.[1] His daughters, as estate administrators,[2] allege that unidentified Jail personnel knowingly and recklessly failed to provide Smith oxygen (and other medications) that his medical conditions required. Defendants—the Jail, its tri-county operators (Lee, Owsley, and Wolfe Counties), and administrator (Harvey Pelfrey)[3]—contend that Plaintiffs fail to plausibly allege a basis for their liability, and thus move for dismissal. For the reasons fully explained below, the Court finds the Complaint deficient as to the federal claims, declines to exercise supplemental jurisdiction over the undisposed state claims, and grants Defendants' motion.

---

[1] The "Jail" or "Three Forks."
[2] Collectively, the "Estate" or "Plaintiffs."
[3] The "Jailer" or "Pelfrey"

# I.  BACKGROUND

The Estate bases its claims on the following straightforward factual allegations.[4] Clyde Smith, Jr., 55 years old, had a history of serious heart and respiratory conditions that required continuous oxygen tank access and regular medication. On March 11, 2018, Breathitt County authorities arrested Smith for DUI and, at roughly 5:00 p.m., transported Smith to Three Forks. During two, 6:51 p.m. and 7:32 p.m., calls, Smith's daughter Hughes advised unidentified Jail personnel of the importance of his access to oxygen and other medications. Unknown Jail staff advised that oxygen was available and that personnel were aware of Smith's conditions and would provide for his needs.

Shortly after midnight on March 12, Smith died; Plaintiffs allege this resulted from lack of medical care and attention. Several hours later, an unknown (male) Jail employee called Hughes to advise of Smith passing. The employee further stated that the Jail did not have oxygen on site and that any prior assurances of oxygen availability "depended on whether another inmate had oxygen." DE 1 at ¶ 6.

Based on these facts, the Estate claims violations of various constitutional provisions under 42 U.S.C § 1983 and levels state law theories against all Defendants. DE 1 at ¶¶ 15–16. Defendants pursue Rule 12 dismissal of all claims. DE 5 (Motion). The motion stands fully briefed and ripe for review. DE 6 (Response); DE 7 (Reply).

# II.  DISMISSAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[4] Under the relevant standard, the Court assesses (and, here, recites) the facts in favor of and as alleged by Plaintiffs. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The factual summary is taken from the Complaint, DE 1.

*v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608. Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). The Court evaluates and tests the well-pleaded Complaint contents. <u>*Peterson v. Ostrander*</u>, No. 17-2160, 2018 WL 4739692, at *2 (6th Cir. Apr. 6, 2018) ("[T]he court must confine its analysis to the pleadings and accept all well-pleaded allegations as true.").

Generally, "matters outside of the pleadings are not to be considered" by a court in ruling on a motion to dismiss. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington*

*Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

## III. ANALYSIS

### A. Preliminary Matters

Before proceeding to the disputed claims (and to focus the analysis), the Court finds it appropriate to thin the claim herd. First, Plaintiffs concede that certain pleaded claims lack viability. The Estate acknowledges that pretrial detainees challenging conditions of confinement are entitled to Fourteenth Amendment, rather than Eighth Amendment, protections. *See* DE 6 at 4; *Ingraham v. Wright*, 97 S. Ct. 1401, 1412 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."). Practically, the rubric is the same.[5] Nonetheless, this point justifies dismissal of the Eighth Amendment claim. Similarly, the Estate concedes that "sovereign immunity bars" its "claims under state tort law against the jail and Municipal Defendants." DE 6 at 12.[6] This concession also forecloses the Estate's state claims

---

[5] *City of Revere v. Massachusetts Gen. Hosp.*, 103 S. Ct. 2979, 2983 (1983) ("In fact, the due process rights of a [detainee] . . . are at least as great as the Eighth Amendment protections available to a convicted prisoner. *See Bell v. Wolfish*, 441 U.S., at 535, n. 16, 545, 99 S. Ct., at 1872, n. 16, 1877."); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, we apply the same standards in both cases[.]" (internal citation omitted)).

[6] The County Defendants as "direct political subdivisions" of the Commonwealth, "enjoy the same sovereign immunity as the state itself." *See Comair, Inc. v. Lexington–Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009). However, the jail is likely

against the Jailer and the "Unknown Agent Employees of Three Forks Regional Jail"[7] in their official capacities. DE 1 at 1; *see Kentucky v. Graham*, 105 S. Ct. 3099, 3105 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity[.]"). The Court, thus, dismisses such claims.

Second, the Court treats Plaintiffs' failure to oppose several of Defendants' dismissal arguments as effectively abandoning the challenged claims. *See Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or to otherwise

---

"protected only by governmental immunity, 'a policy-derived offshoot of sovereign immunity.'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 745 (6th Cir. 2015) (citations omitted). The Court, in case context, sees no need for extensive treatment of a distinction neither party raises. Suffice it to say that the incarceration of pretrial detainees strikes the Court as a paradigmatically "governmental, as opposed to a proprietary, function"; thus, the Jail is equally "immune from [state] tort liability." *Id.* (citations and quotation marks omitted).

[7] As pleaded, Plaintiffs have sued the unknown-employee Defendants only in their official capacities. Three factors support this finding: (1) the Estate explicitly taps the target Defendants as "**Agent** Employees," DE 1 at 1 (emphasis added); (2) when the Estate sought to denote individual capacity status, it did so explicitly, *see id.* ("HARVEY PELFREY, Individually"); and (3) in the 6+ months since Complaint filing (and 15+ months since the events in question), Plaintiff has not sought leave to amend to name such individuals. Indeed, if Plaintiffs sought to file individual capacity suits against such Defendants, they have "yet to identify [the "Doe Defendants"], and thus ha[ve] yet to serve them, clearly in violation of the [90]-day window provided by Rule 4(m)." *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 345 (6th Cir. 2007), *abrogated on other grounds*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017). Nor has the Estate sought expedited discovery on this topic. *Cf. United States v. Kettering Health Network*, No. 1:14-cv-345, 2014 WL 12586794, *1, *1 (S.D. Ohio Dec. 5, 2014) (A party seeking expedited discovery may show good cause for same "by demonstrating that 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'"); *Sweat v. Sanders*, No. 5:18-CV-557-REW, 2019 WL 3240018, at *1 (E.D. Ky. July 17, 2019) ("After the Court permitted expedited discovery of the trooper identity (*see* DE ##7, 12), Plaintiff amended the Complaint to include them as Defendants[.]").

oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion. *See Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976), *aff'd*, 577 F.2d 740 (6th Cir. 1978) (unpublished per curiam).");  *see also* LR 7.1(c). Specifically, the Estate does not oppose challenges to the Fifth and Tenth Amendment § 1983 theories. *See* DE 5-1 at 6–7. Accordingly, the Court dismisses such claims for the reasons the motion advances.

Finally, and though Defendants offer only a brief, general argument on the issue, *see* DE 5-1 at 1, the Court sees absolutely no factual allegations in support of the Complaint's bare Fourth Amendment assertion.[8] This matter involves no warrant, and Plaintiffs do not challenge the reasonableness of any search or Mr. Smith's seizure. Thus, the Court, perceiving no theory of merit, dismisses the Fourth Amendment challenge.

The Court turns to the parties' disputes regarding the winnowed claim slate, including Plaintiffs': (1) Fourteenth Amendment § 1983 claims against all defendants and (2) state-law, individual-capacity claims against the Jailer.

---

[8] The text states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

B.  Fourteenth Amendment Claims

The § 1983 claims fall into two categories: (1) the individual capacity claim against the Jailer, and (2) the claims asserted either directly, or via official capacity, against the County Defendants.[9]

*Deliberate Indifference Standard*

The Estate, to survive the instant motion, needed to allege "facts that, if proven, would show that prison officials acted with 'deliberate indifference' towards conditions at the prison that created a substantial risk of serious harm. . . . This test involves both an objective and subjective component." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (internal citations omitted). Defendants do not, for 12(b)(6) purposes, dispute the pleading's viability as to the objective portion.[10]

The subjective component requires officials to act (or fail to act, in context) with "deliberate indifference to inmate health or safety[.]" *Farmer*, 114 S. Ct. at 1977 (internal citations and quotation marks omitted). Per the cases, deliberate indifference, in turn, has subjective and objective components. *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006).[11] "[T]he deliberate indifference standard 'describes a state of mind more blameworthy than negligence[.]" *Brown*, 207 F.3d at 867. A plaintiff must plausibly

---

[9] Including the Jail as a county entity and the official capacity Pelfrey and Doe Defendant claims. *See Graham*, 105 S. Ct. at 3105 (noting effective identity of official capacity employee allegations and direct claims against entity employer).

[10] To satisfy the objective component, "[f]or a claim (like the one here) based on a failure to prevent harm, the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994).

[11] Case law does not consistently use the same terminology, but the objective component of deliberate indifference substantially dovetails with the sufficiently serious deprivation inquiry. *See, e.g.*, *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Daniels v. Mahone*, No. 1:14-CV-2753, 2015 WL 3619529, at *2-3 (N.D. Ohio June 8, 2015).

allege that a defendant knew of and disregarded conditions objectively posing "an excessive risk to inmate health or safety[,]" and did so with a sufficiently culpable state of mind. *Id.* The objective portion, again (for present purposes), stands undisputed, *i.e.*, the Estate plausibly claims that Smith had a sufficiently serious medical need.

"In considering the subjective component, [the Sixth C]ircuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez*, 466 F.3d at 424; *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (setting out test). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 117 S. Ct. 1382, 1391 (1997)); *see also Farmer*, 114 S. Ct. at 1980 (adopting "subjective recklessness" as the test for deliberate indifference). However, "deliberate indifference . . . is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 114 S. Ct. at 1978. "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). However, "courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious[,]" *Warren*, 576 F. App'x at 553 (internal quotation marks omitted) (quoting *Hope v. Pelzer*,

122 S. Ct. 2508, 2514 (2002)), or in other "usual ways, including inference from circumstantial evidence." *Id.* (quoting *Farmer*, 114 S. Ct. at 1981).

*Jailer – Failure to Train & Supervisory Liability*

The Estate does not claim that the Jailer, in his individual capacity, was directly deliberately indifferent to Smith's needs. Indeed, the Complaint does not allege that Pelfrey was even at the Jail or played a direct factual role on the night in question. The complete pleaded facts specific to Pelfrey (other than identifying his general function, *see* DE 1 at ¶¶ 2 & 13) are as follows:

> Defendant Harvey Pelfrey . . . established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers and employees of the jail.

*Id.* at ¶ 13.[12] In contrast, the Estate explicitly links Smith's death to "certain acts or omissions" by "unknown agents of the jail[.]" *Id.* at ¶ 2. Thus, the Estate's theory is that Pelfrey's liability is derivative of his subordinate's misconduct.

---

[12] Plaintiffs numerous allegations regarding conduct of "Defendants," stated collectively, do not (in case circumstances) materially impact the Rule 12 analysis. *See, e.g.*, *id.* at ¶ 13 ("All of the Defendants collectively contributed to the violation of the rights of the deceased[.]"), ¶ 14 ("Defendants and their agents were negligent and careless in failing to observe, monitor, and provide . . . necessary medical care."), ¶¶ 8 & 15–16. Such "broad, conclusory allegations" do not support a plausible claim absent "facts to support a reasonable inference that any of **these Defendants** individually took" or failed to take actions that violated Smith's constitutional rights. *Boxill v. O'Grady*, --- F.3d ---, No. 18-3385, 2019 WL 3849559, at *3 (6th Cir. Aug. 16, 2019) (emphasis added). As *Boxill* just held, regarding like claims:

> Summary reference to a single, five-headed "Defendants" does not support a reasonable inference that *each* Defendant is liable for [unconstitutional conduct]. *See, e.g.*, *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

*Id.* (emphasis in original).

Yet, under § 1983, allegations "of supervisory liability by themselves . . . will not do the trick. Instead[,] . . . the supervisors must have actively engaged in unconstitutional behavior to be liable[.]" *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (internal quotation marks removed). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984) (citing *Hays v. Jefferson County*, 668 F.2d 869, 872–74 (6th Cir. 1982)). Mere inaction or awareness of misconduct does not suffice. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016); *Leary v. Daeschner*, 349 F.3d 888, 902 (6th Cir. 2003). Rather, "[t]here must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury." *Peatross*, 818 F.3d at 241 (quoting *Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013)).[13]

The Complaint, beyond supposed oversight of unidentified personnel,[14] offers no concrete facts as to Pelfrey. Indeed, the Estate does not allege a single discrete

---

[13] Relatedly, a § 1983 failure-to-train inquiry also considers whether "there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross*, 818 F.3d at 242 (citation omitted).

[14] The Estate's response suggests that the pleading includes an allegation that Pelfrey failed "to properly set policies or customs to adequately provide medical care[.]" DE 6 at 8. The Court sees no such allegation. Moreover, even if Plaintiffs had pleaded such a theory, the Complaint would still fail to state a viable individual capacity claim against Pelfrey. As the Sixth Circuit has explained, where a "supervisor is also the policymaker," courts must take care to distinguish individual- and official-capacity claims, which "turn on two different legal principles." *Essex*, 518 F. App'x at 355. For individual capacity claims: "Liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. There must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury." *Id.* (citations and quotation marks omitted). Thus, the response-claimed (but un-pleaded) nonfeasance theory would, if included, not plausibly entitle the Estate to relief.

affirmative act by Pelfrey (or any other named Defendant). "Plaintiffs were required to point to some actual conduct by [Pelfrey] that directly contributed to [Smith's] injury;" the Complaint contains no such allegation. *See Essex*, 518 F. App'x at 351. Thus, Plaintiffs, stating no plausible, non-conclusory facts relevant to the Jailer's individual liability, fail to plead a viable § 1983 claim against Pelfrey.[15]

*Municipal Claims – Policy or Custom*

The Estate's claims against the County Defendants[16] fail for similar reasons: Plaintiff failed to articulate any facts to back a reasonable inference that any such Defendant's acts caused the alleged constitutional violation.

Again, *respondeat superior* liability does not lie in § 1983 actions. *See Monell v. Dep't of Soc. Servs. of City of New York*, 98 S. Ct. 2018, 2036 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Under § 1983, a municipal defendant's liability must stem from an official policy or practice that causally drove a deprivation of federal rights. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("For liability to attach against Hamilton County under § 1983, the plaintiff must show that deliberate action attributable to the

---

[15] Given the failure to plead a valid constitutional claim, the Court need not resolve the qualified immunity question. Nonetheless, the Court notes the following: (1) the first prong of the qualified immunity inquiry requires assessment of "whether the facts alleged by the plaintiff make out the violation of a constitutional right[,]" (2) a plaintiff's failure on either qualified immunity prong entitles the official to qualified immunity, and, (3) given the Court's conclusion as to pleading viability, Jailer Pelfrey would logically enjoy qualified immunity on the Estate's § 1983 claim. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

[16] Including the Jail, counties, Pelfrey, and the Doe Defendants in their official capacities.

municipality directly caused a deprivation of federal rights." (internal citations and quotation marks omitted)).

Here, Plaintiffs entirely fail to allege, in the pleading, a nexus between any County or Jail policy and the claimed events or injuries. Indeed, the Complaint does not facially allege any policy whatsoever.

Plaintiffs, proposing a Complaint reading that divines a policy allegation, note the following pleaded content:

> Approximately three hours after Clyde Smith Jr. died, Kimberly Hughes received a phone call from jail personnel that her father had passed away. During the call[,] a male jail official advised that in fact they did not have oxygen at the jail. He further advised that any possible previous assurance that oxygen would be available depended on whether another inmate had oxygen.

DE 1 at ¶ 6. The Estate contends that this allegation amounts to a "specifically identif[ied] custom or policy . . . to not provide oxygen to jail inmates unless provided by another inmate." DE 6 at 7. The Court disagrees.

First, the pleading text belies Plaintiffs' contention that the allegation amounts to a specific policy claim. Further, the Court, accepting the pleaded facts as true, need only draw *reasonable* inferences. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (Courts have no obligation to accept "unwarranted factual inferences."). A statement from a single unidentified male jail official—explicitly linked to a prior contrary statement from another unknown employee, *see* DE 1 at ¶ 6 ("any possible previous assurance")—hardly suffices as a statement of official Jail or County policy. If the Estate intended to plead that a County Defendant enacted a policy of (1) denying oxygen to jail inmates, though (2) authorizing sharing between detainees who brought their own oxygen, it could have done so. Here, despite the response <u>argument</u>, Plaintiffs

did not <u>plead</u> an official policy of willful oxygen deprivation as to detainees with known need (or a reasonable basis for such inference).

The gravamen of the § 1983 claim is "deliberate indifference[.]" *See* DE 6 at 4. Yet, a plausible claim that a single, non-policymaking municipal employee "disregarded a known or obvious consequence of his action" is not, alone, enough to establish a plausible § 1983 claim against a municipality. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (citation and quotation marks omitted). Rather, "[m]unicipal liability attaches only where the policy or practice in question is attributable to the municipality[.]" *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (citation and quotation marks omitted).

The furthest the Court could reasonably reach for an inference arising out of the alleged statements is, perhaps, an allegation that the Jail had a policy not to keep oxygen on site. However, that inference would not materially impact the analysis here. The Estate does not allege that the Fourteenth Amendment categorically required the Jail to give Smith *immediate* access to oxygen upon his arrival. Nor does the pleading allege any ground for the Court to infer that a failure to keep on-site oxygen could, alone, constitute municipal deliberate indifference. When a § 1983 claim targets a municipality's "failure to act[,]" whether through training or policy intervention, to "avoid the alleged harm," a plaintiff must plausibly allege a need for municipal action "so obvious, and the inadequacy so likely to result in" a constitutional violation, "that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).

In turn, the cases establish two paths for demonstrating a municipality's need to act: (1) a non-conclusory allegation of actual official "knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations"; or (2) a plausible claim that "the need to act should have been plainly obvious to the municipality's policymakers, who, nevertheless, are deliberately indifferent to the need." *Id.* at 648–49 (citations and quotation marks omitted). The latter route applies only "in a narrow range of circumstances where a violation of federal rights may be a *highly predictable* consequence of the municipality's failure to act." *Id.* at 649 (citations and quotation marks omitted) (emphasis in original).

First, the Complaint identifies no other like incidents, much less a "clear and persistent pattern" of failure to provide care. *Miller*, 408 F.3d at 815. Second, this is not a circumstance where a need to keep oxygen on site "should have been plainly obvious to" County or Jail policymakers. Nor can the possibility that Jail employees might ignore, for several hours, an identified dire medical need be plausibly deemed a "highly predictable consequence of" failing to keep oxygen on site. Plaintiffs, at best, allege a County policy that amounted to failure to actively anticipate the possibility of detainee oxygen need. What the Estate entirely failed to allege is that a constitutional deprivation was a known or obvious consequence of that policy. *Cf. McCain v. St. Clair Cty.*, 750 F. App'x 399, 405 (6th Cir. 2018) (affirming summary judgment in favor of jail that did not stock relevant medication). Thus, as to the only (arguably) pleaded policy or practice, Plaintiffs failed to state a viable claim.[17]

_____

[17] To the extent Plaintiffs base their claims against the County Defendants on a failure to train theory, they stall for several reasons. First and foremost, the Estate does not actually allege any deficient training. Second, and *a fortiori*, the Complaint contains no facts

Finally, and as an alternative dismissal basis, the Court notes the absence of (non-conclusory)[18] causal allegations. "Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman*, 680 F.3d at 648. As a prefacing contention, the Complaint states that "unknown agents of the jail committed certain acts or omissions that resulted in harm and the eventual death of Clyde Smith[.]" *Id.* at ¶ 2. Expanding, the Estate proceeds to explicitly tap Smith's cause of death as "conditions caused by the lack of medical care and the lack of proper supervision and medical attention." DE 1 at ¶ 6. Notably absent, as the Court plumbs for substantive plausibility, is any claim that the unidentified officers acted (or failed to act) pursuant to any County Defendant's policy or practice.

In short, Plaintiffs failed to tether any acts or omissions to County or Jail policy. Indeed, as to the moving Defendants, the Complaint does not include a single particularized allegation of specific conduct, policymaking or otherwise. At bottom, the Estate simply fails to plausibly claim that any Defendant adopted a policy, or knowingly acquiesced in a widespread practice, of improper supervision or denying detainees medical care. This dooms the County Defendant claims.

---

tending to suggest that any inadequate training concerned "a relevant" issue—*e.g.*, providing necessary medical treatment—or rose to the level of "evidencing a 'deliberate indifference' to the rights of" detainees, as required for "such a shortcoming [to] be properly thought of as a [County] 'policy or custom' that is actionable under § 1983." *Miller*, 408 F.3d at 816. Finally, even if the Court could glean an inference of inadequate training from the Complaint, "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient[.]" *Id.*

[18] *See* DE 1 at ¶ 13 ("All of the Defendants collectively contributed to the violation of the rights of the deceased[.]").

Plaintiff's factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they [need to] show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1965) (emphasis in original). Determining pleading sufficiency is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Three allegations set the factual framework for Plaintiffs' claims: (1) Smith, post-arrest, was jailed at Three Forks, (2) Smith had an objectively serious medical need for oxygen, (3) Smith died in custody because unidentified Jail employees failed to provide him oxygen. For present purposes, the key question is who, based on the pleaded claims, could plausibly be culpable for the alleged failure to provide Smith oxygen during those 7 critical hours. The Estate offers only three facts regarding this interim period to guide that inquiry. Plaintiffs claim: (A) that at least two unknown Three Forks staff members knew, by 7:32 p.m., of Smith's critical medical needs, *see* DE 1 at ¶ 5, (B) that such staff acknowledged awareness of Smith's conditions and advised that oxygen was available at the Jail, *see id.*, and (C) that, after Smith's death, a (perhaps) separate jail official advised that the Jail did not keep oxygen on hand and that any prior assurances as to availability depended on oxygen use by another inmate.

From this claim landscape, the Estate asks the Court to infer plausible allegations of a Tri-County municipal policy leading to Smith's death and/or a deliberately indifferent administrator (though one not alleged to have been present). Plaintiffs' attempt, in response, to spin the Complaint allegations (to include, what amounts to an

inherently implausible inference)[19] strays too far from the theory actually pleaded. Indeed, Plaintiffs' vacillation between proposed inferences of affirmative County policy and the Jailer's "failure to properly set policies" is telling. *See* DE 6 at 8. [Plaintiffs' response actually does not settle on a theory of County or Jailer as the purported policymaker.] At bottom, the Estate simply failed to allege conduct, misconduct, or meaningful non-conduct, of any moving Defendant. The § 1983 claims do not cross the Rule 12, conceivable/plausible, *Twombly/Iqbal*, line of demarcation, and the County Defendants thus are entitled to dismissal.

The Court simply sees no policy in the pleading verbiage. Plaintiffs claim they were told of oxygen availability and that representation was false. Though this might suggest negligence, an empirical mistake, or a faulty representation by staff, the assertions do not equal actionable municipal policy or custom, the necessary hook as to the entities here sued. "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County]

---

[19] Plaintiffs suggest and criticize a "no supplemental oxygen" policy. They do not allege, as a policy, that the Jail denies medical care, or fails to involve health professionals, when appropriate. The Court notes, as relevant to (though not dispositive of) the plausibly question, and from a case Plaintiffs cite, Three Forks's written medical care policy filed in 2014:

> All Regional Jail inmates shall have access to 24 hour per day health care. Medical care at the facility shall be delivered under the direction of a licensed physician and through the use of trained health care personnel. No deputy or other employee shall ever summarily or arbitrarily deny an inmate's request for health care services.

*Noble v. Three Forks Reg'l Jail Auth.*, 995 F. Supp. 2d 736, 741 (E.D. Ky. 2014); *see also* FRE 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) ("As noted above, these court records are available online to members of the public; as they are court records, this court may take judicial notice of them."). [The Estate, itself, directed the Court to *Noble*. *See* DE 6 at 12.]

itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.), *cert. denied*, 114 S. Ct. 1219 (1994)). A policy, in such context, must evince, relative to an injured person, "that the municipality itself, through its acts, policies, or customs, violated his [constitutional] rights by manifesting deliberate indifference to his serious medical needs." *North v. Cuyahoga Cty.*, 754 F. App'x 380, 390–91 (6th Cir. 2018). Plaintiffs, foundering on each possible policy avenue, do not cite to an enacted rule, do not cite specific (or any direct) actions by an empowered final policy-maker, do not point to a specific training lapse or deficiency, and do not cite a record of violation acquiescence. *See Winkler v. Madison Cty.*, 893 F.3d 877, 901–02 (6th Cir. 2018). The result of the Smith detention, though undoubtedly sad and concerning, does not ensure passage of the Complaint through Rule 12's rigors.[20]

C. State Law Claims

As to the Estate's state-law individual-capacity claims against Pelfrey, the Court, having found all federal claims deficient under Rule 12, finds dismissal, without prejudice, of the remaining claims appropriate. Given the common factual field, the

---

[20] Plaintiffs note the medical care duty in 501 KAR 3:090. That regulation, applicable to Kentucky jails, does generally mandate adequate medical screening/care and requires, *e.g.*, each jail to have a first-aid kit. A policy of not having oxygen on hand, the most Plaintiff fairly alleges, does not facially run afoul of the Constitution or the regulation. Not having oxygen on hand at all times does not equate to a denial, categorically, of required or emergency medical care. What happened in Smith's case is not known, but the Court can address only the pleadings before it. Being in charge of a jail where someone dies does not perforce trigger § 1983 liability. Such liability turns on the existence of catalyzing unconstitutional action of the governing official or—by policy or custom—entity; the Complaint in this case lacks the factual content required to plausibly indicate liability of the extant Defendants.

Court, under 28 U.S.C. § 1367(a), has supplemental jurisdiction over the Kentucky claims. However, after a "district court has dismissed all claims over which it has original jurisdiction" the exercise of supplemental jurisdiction is not mandatory. 28 U.S.C. § 1367(c). The Court's discretion in this area is broad, but "bounded by constitutional and prudential limits on the use of federal judicial power." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (hereinafter *Musson*). Specifically, the Court must account for "judicial economy, convenience, fairness, and comity" concerns. *Carnegie-Mellon Univ. v. Cohill*, 108 S. Ct. 614, 619 (1988). If all federal claims are dismissed pretrial, "the balance of considerations usually will point to dismissing" or remanding state claims. *Musson*, 89 F.3d at 1254–55. Indeed, "a 12(b)(6) dismissal of the touchstone claims" creates "a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255. Put differently, a pleading-stage rejection of federal claims "precludes the exercise of supplemental jurisdiction over any remaining claims" absent "unusual circumstances." *Id.*; *see also Brown v. Burch, Porter & Johnson, PLLC*, No. 15-6242, 2016 WL 9448027, at *3 (6th Cir. Nov. 21, 2016) ("Such circumstances include the dismissal of federal claims on the eve of trial, following years of preparation.").

The Court sees nothing, on this record, to overcome the weighty presumption. This case is in its infancy. The parties' filings total five docket entries: the Complaint, summonses, and the 12(b)(6) briefing. *See* DE 1, 3 & 5-7. Further, Kentucky's recognition of the difficulties inherent in parsing the state's qualified immunity jurisprudence provides a comity-based dismissal driver. *See, e.g.*, *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014) ("The question of when a task is ministerial versus discretionary has long plagued litigants and the courts."); *Haney v.*

*Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) ("In spite of the[ ] often quoted [discretionary/ministerial] guidelines, determining the nature of a particular act or function demands a more probing analysis than may be apparent at first glance."); *Plummer v. Lake*, No. 2012-CA-001559-MR, 2014 WL 1513294, at *5 (Ky. Ct. App. Apr. 18, 2014) ("The determination of whether an act is discretionary or ministerial is no easy or straightforward task.").[21] Given the "strong" presumption and these factors, the Court declines to exercise jurisdiction over the remaining[22] state law claims.

## IV.    CONCLUSION

Mr. Smith's death deserves scrutiny. The Court is not here validating the medical care provided (or not) on March 11–12. The alleged specific notice to and assurances from the Jail are worrisome and may impact or suggest state or federal claims against directly involved individuals, whoever they may be. However, the named Defendants are at the administrative apex, far from the Jail trenches. Plaintiffs try to hold the entities and leadership responsible without running the substantive rapids ever present in a § 1983 claim. By not effectively identifying an actionable policy or custom, and by not linking

---

[21] *See also Blaha v. Hetfield*, 127 F.3d 1102 (table) (6th Cir. 1997) ("We are unable to say with assurance that Michigan courts would analyze Michigan law as did the district court[.] . . . In light of the unsettled Michigan case law, the district court improperly exercised jurisdiction over the state law trespass claim[.] . . . The court would have been better advised to dismiss that claim without prejudice.").

[22] The Court excepts from this analysis and disposes of the state law claims to the extent they are alleged against all other Defendants. As noted, the Estate has conceded that immunity bars such claims. *See* DE 6 at 12. Thus, these claims present the "unusual circumstance" where it is "absolutely clear how the pendent claims can be decided." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Musson*, 89 F.3d at 1256 (citing *Wright*). Thus, the Court finds retention of such claims, for purposes of immunity-based dismissal, appropriate because "the correct disposition of the claim is 'so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law.'" *See Wright*, 29 F.3d at 1252 (citation omitted).

Defendant conduct to injury, the Complaint is legally deficient. The Court, taking the facts alleged as true and properly applying the *Iqbal*/*Twombly* filter, simply sees no legally plausible theory that the pleaded facts support.

For all these reasons and on the stated terms, the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 5 on terms;

2. The Court **DISMISSES** Plaintiff's § 1983 claims **WITH PREJUDICE**; and

3. The Court, given the immunity concession (as to the County Defendants) and supplemental jurisdiction findings (as to the individual capacity Pelfrey claims) **DISMISSES** Plaintiff's state law claims **WITHOUT PREJUDICE**;[23] and

4. The Court will enter a separate judgment.

This the 12th day of September, 2019.

Signed By:

*Robert E. Wier*

**United States District Judge**

---

[23] *Cf. Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice."). The Court dismisses as to the entities based on immunity.